UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

<table>
<tr><td>CHAMBERS OF<br>AJMEL A. QURESHI<br>UNITED STATES MAGISTRATE JUDGE</td><td>U.S. COURTHOUSE<br>6500 CHERRYWOOD LANE<br>GREENBELT, MARYLAND 20770<br>(301) 344-0393</td></tr>
</table>

March 18, 2026

LETTER TO COUNSEL

RE: *Steven S. v. Frank Bisignano,* [1] *Commissioner, Social Security Administration*
Civil No. 1:24-cv-03001-AAQ

Dear Counsel:

On October 16, 2024, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. ECF No. 1. I have considered the parties' cross-Motions for Summary Judgment and Reply, ECF Nos. 11, 13, and 14, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, for the reasons discussed below, the Court will deny both Motions and remand this case for further consideration in accordance with the analysis and conclusions below.

## I.      The History of this Case

Plaintiff's case has an extensive procedural history. Plaintiff initially filed his claim for Title II disability insurance benefits and Title XVI social security income on June 19, 2013, alleging a disability onset date of June 27, 2011. ECF No. 7-4, at 51. The claims were denied on October 11, 2013, and upon reconsideration on January 31, 2014. *Id.* After a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on April 30, 2014. *Id.* at 60. On June 11, 2014, the Appeals Council vacated and remanded the decision. *Id.* at 66. After a new hearing, an ALJ issued another unfavorable decision on September 18, 2014. *Id.* at 83.

According to Plaintiff's counsel, the then-unrepresented Plaintiff intended to appeal the September 18, 2014, unfavorable decision but mistakenly filed a new application with a new disability onset date of September 18, 2014, the date of the previous denial. ECF No. 7-3, at 104-05. The decision on this second application, filed October 22, 2014, is the decision Plaintiff currently appeals. ECF No. 7-9, at 6. On August 24, 2017, an ALJ held a hearing with a now represented Plaintiff, ECF No. 7-3, at 99, and on November 14, 2017, denied his application, ECF

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

*Steven S. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 1:24-cv-03001-AAQ
March 18, 2026
Page 2

No. 7-4, at 141.  The ALJ also denied Plaintiff's request to reopen his initial claim.  *Id*.  On January 15, 2019, the Appeals Council vacated the ALJ's 2017 decision and remanded the case.  ECF No. 7-4, at 156-58.

The case continued to move back and forth between the ALJ and the Appeals Council over the next several years.  After another hearing, the ALJ issued an unfavorable decision on July 2, 2019.  ECF No. 7-4, at 174-75.  The Appeals Council then vacated that decision and remanded Plaintiff's case.  *Id.* at 184-85.  An ALJ held another hearing on June 22, 2022, ECF No. 7-3, at 162, and issued an unfavorable opinion on July 6, 2022, ECF No. 7-10, at 2.  After the Appeals Council denied Plaintiff's request for review, Plaintiff appealed the ALJ's decision to this Court.  *Id.* at 46-47.  Upon review of the ALJ's June 22, 2022, decision, this Court remanded the case on October 3, 2023.  *Id.*

Plaintiff attended the most recent telephonic hearing on August 6, 2024.  ECF No. 7-9, at 34.  During this hearing, Plaintiff amended the alleged period of disability to a closed period starting on the date of the claimant's first set of applications, June 19, 2013, and ending March 22, 2019, when he began working again.  *Id.* at 5.  On August 16, 2024, the ALJ issued the decision currently being appealed, finding Plaintiff not disabled for any twelve-month period during the closed period of disability.  *Id.* at 25.  Having exhausted all administrative remedies, the ALJ's decision reflects the final, reviewable decision of the SSA.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    The ALJ's Decision

On remand from the District Court, the ALJ found that Plaintiff did not engage in substantial gainful activity during the requested closed period of disability.  ECF No. 7-9, at 10.  The ALJ also found that Plaintiff had the severe impairments of "schizoaffective disorder, depressive disorder, and autistic disorder" but that the combination of these impairments did not meet or medically equal the severity of the listed impairments in the SSA regulations.  *Id.* at 10-11.  Despite his impairments, the ALJ determined that, during the closed period, the Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non[-]exertional limitations: the claimant could tolerate occasional exposure to loud and very loud noise (as defined in the *Dictionary of Occupational Titles*).  The [Plaintiff] could tolerate occasional interaction with coworkers and supervisors, but he could tolerate no interaction with the general public.  The [Plaintiff] was not capable of sustaining work requiring a specific production rate, such as assembly line work or work that requires hourly quotas.  The [Plaintiff] was capable of using judgment to make simple work-related decisions, dealing with occasional changes in a routine work setting, and understanding, remembering, and carrying out simple

> instructions and could perform tasks on a regular and sustained basis
> to complete a normal work[-]day and week.

*Id.* at 14.

To determine Plaintiff's RFC, the ALJ applied a two-step analysis of Plaintiff's symptoms. *Id.* (citing 20 C.F.R §§ 404.1529, 416.929; SSR 16-3P, 2017 WL 5180304, at *3-5 (Oct. 25, 2017)). First, the ALJ considered whether objective medical evidence presents a medically determinable impairment "that could reasonably be expected to produce the [Plaintiff's] alleged symptoms." *Id.*; *see also* 20 C.F.R. § 404.1529(b). Second, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. ECF No. 7-9, at 14; *see also* 20 C.F.R. § 404.1529(c).

Plaintiff testified to symptoms he experienced during the closed period, beginning June 19, 2013, which he claimed prevented him from working, including: having trouble concentrating and understanding information, ECF Nos. 7-3, at 107-8; 7-7, at 98; 7-9, at 1430; having difficulty with his short-term memory, ECF Nos. 7-3, at 108, 141; 7-7, at 104, 107, 119; 7-9, at 52; fear of people and large crowds, ECF Nos. 7-3, at 66, 81; 7-7, at 98, 119; 7-9, at 52; depression and difficulty getting out of bed, ECF Nos. 7-3, at 147; 7-7, at 107; 7-9, at 52; fear that he was being watched and followed, and hearing voices, ECF Nos. 7-3, at 139, 174–75; 7-7, at 104, 119; and not being able to handle loud noises, ECF Nos. 7-3, at 66, 81; 7-7, at 98; 7-9, at 52.

The ALJ determined that Plaintiff's impairments – schizoaffective disorder, depression, and autism – could reasonably be expected to cause the alleged symptoms, but the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. ECF No. 7-9, at 16. Specifically, the ALJ held that Plaintiff's statements were not fully consistent with evidence of Plaintiff's "course of treatment, documented improvement with treatment, activities of daily living, and work history." *Id.*

First, the ALJ found that "the medical evidence does not support the extent of the claimant's alleged loss of functioning during the requested closed period". *Id.* Plaintiff was psychiatrically hospitalized, from May 9, 2013, to May 14, 2013, for suicidal ideation and auditory hallucinations. *Id.* at 16, 19; *see also* ECF No. 7-8, at 6-31 (psychiatric hospitalization records). Except for this period of hospitalization, the ALJ describes the rest of the "longitudinal records" as documenting "good mental status exam findings overall." ECF No. 7-9, at 16. After his hospitalization, Plaintiff began seeing a psychiatrist and therapist regularly. ECF No. 7-9, at 49-50. Upon discharge from the hospital, Plaintiff "denied feeling suicidal and denied hearing voices." *Id.* at 16; ECF No. 7-8, at 6. However, he would later report hearing voices, ECF No. 7-3, at 174-75, feeling as though people were watching and following him, *id.* at 139, experiencing

visual hallucinations, *id.* at 175, and having difficulty understanding and processing information, *id.* at 107.

Despite characterizing the longitudinal record as demonstrating good mental health status, the ALJ acknowledges that Plaintiff's course of treatment changed during the closed period. Plaintiff has been on three or four different medications during the closed period. ECF No. 7-9, at 16. During his time on Risperdal, his treating physicians noted his attention span and concentration were "poor" and that he was easily distracted. *See* ECF No. 11 at 20-21 (citing medical records from 2014 to 2016). In 2016, his treating psychiatrist changed his prescription from Risperdal to Haldol due to elevated prolactin levels. ECF No. 7-8, at 208. After switching to Haldol, Plaintiff's records indicate an improvement in his concentration. *See, e.g.*, ECF No. 7-8, at 201 (noting Plaintiff's attention and concentration were "good"). Doctors would later prescribe Seroquel to treat Plaintiff's schizoaffective disorder. ECF No. 7-9, at 16. Plaintiff testified that Seroquel stabilizes him and stops the voices, allowing him to work. ECF No. 7-9, at 51. The ALJ does not discuss the effects of different medications on Plaintiff but notes that Plaintiff's "distractibility" did not preclude him from performing tasks such as working for Walmart. ECF No. 7-9, at 17.

Second, the ALJ found that Plaintiff's "work history undermine[d] the extent of his allegations." ECF No. 7-9, at 18. The ALJ noted that Plaintiff worked before and after the closed period. For approximately five years before the closed period, Plaintiff worked at Walmart unloading trucks. ECF No. 7-9, at 43. Around 2011, Plaintiff's father died which triggered worsened depression symptoms and caused Plaintiff to stop caring "about everything." *Id.* at 47-48. Plaintiff testified that during this time he cut himself and thought about killing himself. *Id.* at 48. Plaintiff also testified that although he had heard voices since he was a child, after his father's death, the voices became louder and more negative. *Id.* at 47. In 2011, Plaintiff was fired from Walmart because he stopped arriving for work. *Id.* at 48. Eventually, Plaintiff's symptoms would lead to the hospitalization described above. Plaintiff did not work again until March 22, 2019. *Id.* at 10.

On March 22, 2019, the end of the closed period, Plaintiff began working again, this time for McDonald's where he unloaded trucks, cleaned, and changed oil. ECF No. 7-9, at 44. Plaintiff testified that he was able to go back to work because he began taking Seroquel, which he describes as "the right medicine" and his mom and sister provided him support. *Id.* at 53. Plaintiff testified that Seroquel makes him "stable"; before taking it, he had a difficult time retaining information and getting out of bed. *Id.* at 51-53. From the record, it is unclear when Plaintiff was first prescribed Seroquel, s*ee* ECF No. 7-13, at 24 (SSA form dated November 4, 2020, listing Seroquel as one of Plaintiff's medications), but Plaintiff's counsel states that he was prescribed Seroquel after the closed period of disability, ECF No. 11, at 16 n.15.

Plaintiff ended his employment with McDonald's in 2022. ECF No. 7-9, at 44. Plaintiff explained that he left because of a disagreement with the store manager about whether Plaintiff

*Steven S. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 1:24-cv-03001-AAQ
March 18, 2026
Page 5

was able to complete his work.  *Id*.  From September 2022 to the present, Plaintiff has worked stocking shelves at Food Lion.  *Id*.; ECF No. 7-12, at 20.  Plaintiff reported that he is doing well at Food Lion and believes he can move up in the company.  ECF No. 7-9, at 53-54.

Based on the RFC above, the ALJ determined that Plaintiff was unable to perform past relevant work as a material handler during the closed period.  ECF No. 7-9, at 23.  However, the ALJ determined that Plaintiff did not have a disability during the period because he could perform other jobs that existed in significant numbers in the national economy.  *Id.* at 23-24 (noting that Plaintiff could perform work as a cleaner, merchandise maker, and ironer).  As a result, the ALJ denied Plaintiff's claim for disability benefits.  *Id.* at 24.

## III.    Analysis

On appeal, Plaintiff challenges the ALJ's determination on two separate, but related, grounds.  According to Plaintiff, the ALJ: (1) applied an improper analysis, based on the Fourth Circuit's decisions in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), and *Shelley C. v. Comm'r, Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023); and (2) improperly considered Plaintiff's subsequent closed period work history.  Together, these issues provide a sufficient basis to remand the case to the Social Security Administration.

### A. The ALJ Improperly Discounted the Intensity of Plaintiff's Symptoms of Depression.

The SSA must address depression using a two-step framework.  20 C.F.R. §§ 404.1529, 416.929.  First, the ALJ must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment.  *Id.* §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  Second, if the ALJ finds a medically determinable impairment, the ALJ must assess the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p.  At the second step, generally, the plaintiff is not required to produce objective evidence of the pain itself or its intensity.  *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989).  The Fourth Circuit has held that this evidentiary rule is particularly forceful in cases where depression impacts plaintiffs.  As the Fourth Circuit has emphasized, "no laboratory test has yielded results of sufficient sensitivity and specificity to be used as a diagnostic tool for [major depressive disorder]." *Shelley C.*, 61 F.4th at 361 (internal citations and quotation marks omitted).  "Symptoms caused by major depression can vary from person to person[;]" they are "entirely subjective, determined on a case-by-case basis."  *Id.* (internal citations and quotation marks omitted).  Accordingly, an ALJ commits legal error by discounting a claimant's symptoms based on objective evidence.  *Id.* at 360-61; *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain . . . solely because the objective medical evidence does not substantiate your statements.").

Plaintiff's depression is well-documented in the record since the beginning of the closed period.  ECF No. 7-9, at 16 (noting that in May 2013, he was prescribed medication for schizoaffective disorder and depression); *id.* (recounting that in May 2013 he was hospitalized for

*Steven S. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 1:24-cv-03001-AAQ
March 18, 2026
Page 6

suicidal ideation).  At the hearing before the ALJ, Plaintiff testified further that his symptoms of depression included voices in his head, lack of motivation, suicidal thoughts and self-harm.  *Id.* at 47-48.  As Plaintiff testified, he "had thought about [suicide] so much [he] would look at pill bottles and edge of knives thinking it would just be better off that [he was] not here."  *Id.* at 48.

The ALJ impermissibly relied on objective evidence to disregard Plaintiff's symptoms of depression.  Although the ALJ found that Plaintiff's depression constituted a severe impairment, *id.* at 10, he nonetheless concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." *Id.* at 16.  The ALJ then relied on objective evidence to discount plaintiff's subjective complaints arising from his depression.  *See id.* ("The medical evidence does not support the extent of the claimant's alleged loss of functioning during the requested closed period but does support the above residual functional capacity (RFC).").  The ALJ generally reasoned that, according to his medical records, upon release from his hospitalization, Plaintiff's condition significantly improved.  *Id.*  The ALJ emphasized that "[d]uring the consultative psychiatric exam, performed in September of 2013, the claimant's demeanor was sad, and his affect was constricted, but his associations were intact, his short and long-term memory were intact, his social judgment appeared intact, and he was cooperative, without any apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process present during the exam." *Id.*  He then walked through the longitudinal records noting that they "generally document good mental status exam findings overall." *Id.*  "In May of 2014, he demonstrated good judgment, he had a normal mood and affect, he was active and alert, and his recent and remote memory were normal." *Id.*  According to records from September 2014, "he was noted to be easily distracted on examination, but his distractibility has not precluded him from performing tasks, as noted during the consultative psychological exam . . . " *Id.* at 17.

This Court has regularly held that remand is appropriate when an ALJ discounts a plaintiff's symptoms of depression based on objective medical evidence.  *See Lonnell J. v. Bisignano*, No. 24-3673-DRM, 2026 WL 693344, at *5 (D. Md. Mar. 12, 2026) (remanding where the ALJ referenced "providers' clinical interpretations of their observations, including multiple characterizations of Plaintiff's affect, orientation, demeanor, eye contact, participation, and mood, describing them as 'normal,' 'good,' 'neutral,' 'euthymic,' and 'appropriate'"); *Danielle W. v. Bisignano*, No. 24-3516-DRM, 2026 WL 636844, at *4 (D. Md. Mar. 6, 2026) (remanding where the ALJ relied on reports of normal findings that imply the absence of depression); *Matthew E. v. Bisignano*, No. 24-2166-DRM, 2025 WL 1919995, at *5 (D. Md. Jul. 10, 2025) (remanding where the ALJ proceeded to discount Plaintiff's depressive symptoms after an examination of the objective evidence).  "The presumed relevance of these normal findings is that they imply the absence of '[p]sychiatric signs' of depression . . . and therefore a lack of 'objective medical evidence' supporting Plaintiff's testimony about his symptoms of these disorders." *Lonnell J.*, 2026 WL 693344, at *5.  The ALJ's reliance on these findings "suggests he engaged in the analysis forbidden by *Arakas* and *Shelley C . . .*" *Id.*

The Commissioner's brief response does not alter this result.  In Opposition, the Commissioner notes that much of what the ALJ relied on as to Plaintiff's mood came from Plaintiff himself.  ECF No. 13, at 11.  This Court has rejected the argument that an ALJ's sporadic citation

to a claimant's own prior statements will excuse an analysis that relies heavily on objective medical evidence. *See Lonnell J.*, 2026 WL 693344, at *4 (remanding even though the ALJ relied, in part, on a comparison of claimant's testimony to his past statements). This is consistent with the Fourth Circuit's decision in *Shelley C.*, in which the court remanded the case even though the ALJ cited some of the plaintiff's own statements in support of his determination that the plaintiff was not disabled. *See Shelley C.*, 61 F.4th at 362-64 (faulting the ALJ for cherry picking plaintiff's statements, including her denial of suicidal ideations; that she was able to enjoy things at times, including being active with her family; her capacity to enjoy a wedding; and gratitude for treatment). Further, as discussed below, the ALJ's error was not limited to his reliance on Plaintiff's medical records to discount Plaintiff's pain, but also Plaintiff's work history before and after the closed period.

### B.  The ALJ Improperly Relied on Plaintiff's Work History.

"In closed period cases, the ALJ should consider evidence within the closed period of disability to determine whether [p]laintiff was entitled to benefits for that limited duration." *Charlene L. v. Saul*, No. 3:19cv626 (REP), 2021 WL 725822, at *8 (E.D. Va. Feb. 3, 2021), *report and recommendation adopted*, No. 3:19cv626-REP, 2021 WL 725078 (E.D. Va. Feb. 24, 2021) (citing *Adkins v. Berryhill*, No. 3:17-CV-01927, 2017 WL 3781167, at *11 (S.D. W.Va. Aug. 9, 2017)). The ALJ may consider evidence outside the disability period that is "probative" of disability within the closed period. *Id.* (citing *Hill v. Colvin*, No. 15-1027, 2016 WL 3181762, at *10 (D. Md. June 8, 2016)). Evidence outside the closed period is probative when it "speaks to the credibility and accurateness" of evaluations and opinions during the closed period. *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 605 (6th Cir. 2014) (citations omitted). However, "such evidence must be viewed 'with caution,' as it should only be considered to support a finding of disability during the relevant period." *Charlene L.*, 2021 WL 725822, at *8 (citing *Williams v. Astrue*, No. 3:11cv208-JAG, 2012 WL 1267890, at *3 (E.D. Va. Mar. 28, 2012), *report and recommendation adopted*, No. 3:11cv208-JAG, 2012 WL 1252620 (E.D. Va. Apr. 13, 2012)). Additionally, "neither the Social Security Act nor regulations direct the SSA to treat an applicant's employment after a claimed period of disability as evidence against the applicant's claim." *Alicia M. F. v. Saul*, No. TMD 19-877, 2020 WL 3100627, at *5 (D. Md. June 11, 2020) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Upon finishing his review of Plaintiff's medical records, the ALJ erroneously relied on Plaintiff's work history before and after the closed period to deny benefits. *See* ECF No. 7-9, at 18 ("Considered along with the medical evidence, the claimant's work history undermines the extent of his allegations on his overall functioning."). The ALJ specifically emphasized the nature of the work Plaintiff performed before the closed period, as well as the positive steps he has made in his current position after the closed period. *See id.* ("His ability to work full-time prior to the requested closed period of disability and after the requested closed period of disability, with no accommodations either alleged or shown, undermines the extent of his allegations."); *id.* at 17 (citing "work history" as evidence that Plaintiff's distractibility does not preclude him from performing tasks); *id.* at 12, 18 (citing "semi-skilled occupation" at Walmart as a reason why Plaintiff only had a moderate limitation in understanding, remembering, or applying information);

*Steven S. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 1:24-cv-03001-AAQ
March 18, 2026
Page 8

*id.* at 13 (citing his work at Walmart to find a mild limitation with "adapting or managing oneself"); *id.* at 19 (citing the five years he worked at Walmart as a reason his "decreased attention span on examination" does not preclude work during the closed period). The ALJ, however, failed to explain how his previous or present work is indicative of his ability to work during the closed period. This was particularly problematic given: 1) Plaintiff's well documented problems – his hospitalization, his inadequate medical treatment, as well as the death of his father – which he alleges led to his disability during the closed period, *see* ECF No. 7-8, at 6-31 (recording Plaintiff's psychiatric hospitalization); ECF No. 7-9, at 47-48 (describing how Plaintiff had heard voices as a kid but when his father died, they became louder and more negative); *id.* at 1430 (describing how before Plaintiff received the Seroquel to treat his schizoaffective disorder, he had difficulty processing information); and 2) that the ALJ's reliance on Plaintiff's employment history before the closed period contradicts his own repeated statements that Plaintiff's symptoms "improved with treatment" after his hospitalization. *See* ECF No. 7-9. at 19, 22.

For these reasons, the Court remands this case for additional consideration by the Commissioner.

## IV.    Conclusion

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 11, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 13, is DENIED. Pursuant to 42 U.S.C. § 405(g), the SSA's judgment is VACATED. This case is REMANDED for further proceedings in accordance with this Opinion and Order.

So ordered.

Sincerely,

/s/
Ajmel A. Quereshi
United States Magistrate Judge